IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH NOLAN<br>3884 Charter Club Drive<br>Doylestown, PA 18902<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>USP READING, INC. d/b/a<br>BUCKS COUNTY SURGICAL SUITES<br>2800 Kelly Road, Suite 100<br>Warrington, PA 18976<br>　　and<br>UNITED SURGICAL PARTNERS<br>INTERNATIONAL, INC.<br>14201 Dallas Parkway<br>Dallas, TX 75254<br><br>　　　　Defendants. | CIVIL ACTION<br><br>No.: _____<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Elizabeth Nolan (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by USP Reading, Inc. d/b/a Bucks County Surgical Suites ("Defendant BCSS") and United Surgical Partners International, Inc., ("Defendant USPI") (hereinafter *collectively* referred to as "Defendants") of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e *et. seq*.); the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 *et. seq*.); and the Pennsylvania Human

Relations Act ("PHRA").[1] As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants is deemed to reside where it is subjected to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5. Plaintiff timely filed a Charge of Discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative remedies before initiating this action by timely filing and dual-filing her Charge

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under the ADA and Title VII. Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA and Title VII.

with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult female, with an address as set forth in the caption.

8. Defendant United Surgical Partners International, Inc. is the largest ambulatory surgery platform in the country, with more than 535 surgical facilities, and upon information and belief, owns and operates Defendant USP Reading, Inc. d/b/a Bucks County Surgical Suites.

9. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single/integrated and/or joint employer for purposes of the instant action.

10. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. On or about October 17, 2022, Defendants hired Plaintiff as a Per Diem Registered Nurse ("RN").

13. Defendants' Director of Nursing Lauren Mahler ("Mahler") and Defendants' Administrator, Joseph Fuchs were Plaintiff's direct supervisors during her employment.

14. Plaintiff was a hard-working and high performing employee who developed strong professional relationships with her most of her colleagues.

15. However, Defendants' Manager of Supply, Charles Gale ("Gale") subjected Plaintiff to unwelcome, severe, and pervasive sexual harassment almost immediately at outset of her employment. By way of example only, and not an exhaustive list:

   a. On no less than fifteen (15) occasions, Gale catcalled and leered at Plaintiff at work;

   b. No less than five (5) times, Gale leered at Plaintiff had made disgusting comments such as "I'll be watching you," and "I'll meet you in the supply closet" (implying he wanted to have sexual relations with Plaintiff at work;

   c. No less than four (4) times, Gale waited for Plaintiff outside the women's locker room in hopes of catching a glimpse of Plaintiff changing into/out of gym clothes and would try to hug and touch Plaintiff;

   d. Gale would routinely grab and caress Plaintiff's hand while she was at the Nurse's station;

   e. Gale would routinely stroke Plaintiff's lower back;

   f. Gale would regularly wait for Plaintiff in the breakroom so that he could eat lunch with her and would become angry when Plaintiff tried to escape the breakroom to avoid eating with him;

16. By way of further example, in or about January 2023, Gale asked invasive, personal questions of Plaintiff regarding her marriage. Specifically, Gale questioned Plaintiff as to whether her husband "wanted [her] home," as opposed to working. Gale further questioned what type of drinks Plaintiff liked to drink when on dates with her husband.

17. On or about January 10, 2023, Gale started messaging Plaintiff via Facebook Messenger, attempting to engage her in conversation outside of work.

18. In one message, on or about January 18, 2023, Gale referred to Plaintiff as "boo" and inquired whether he would be seeing her the following day.

19. Thereafter, in or about July/August of 2023, Gale made a comment to RN, Stephanie Petosi ("Petosi") that he was "looking at [Plaintiff's] legs" while outside the locker room.

20. The aforesaid incidents are merely *some* examples of the debilitating sexual harassment and gender discrimination Gale subjected Plaintiff to.

21. Gale's gender discrimination and sexual harassment culminated on or about October 30, 2023, when he physically touched Plaintiff yet again.

22. On said date, Gale approached Plaintiff from behind, brushed her hair to the side, forced his hands down her shirt, and stroked her back, reaching my brassiere.

23. Gale exhibited this reprehensible conduct in front of Heidi Flanagan ("Flanagan"), Charge Nurse.

24. Later in Plaintiff's shift, Gale then hugged her again without permission—causing Plaintiff to leave the workplace in tears.

25. Later that day, Plaintiff emailed Hughes and Fuchs detailing the severe and pervasive sexual harassment Gale had subjected her to throughout my employment.

26. Plaintiff stated that "today I left the workplace in tears" due to Gale's inappropriate and physical touching on said date (discussed *supra*). Plaintiff further explained the incident stating Gale "reached inside the back of my scrubs and touched my back" and described the same as "sexual harassment in the workplace."

27. Within minutes, Fuchs confirmed receipt of my email and assured Plaintiff that Defendants would investigate my complaint.

28. The following day, on or about October 31, 2023, Hughes and Fuchs called Plaintiff during which Plaintiff detailed Gale's ongoing sexual harassment and physical touching.

29. Hughes and Fuchs again assured Plaintiff that an investigation would be conducted, and that corporate Human Resources ("HR") would be in touch.

30. The following day, however, on or about November 1, 2023, Hughes summoned Plaintiff to her office and shut the door. Hughes then threatened Plaintiff's employment by warning her that if she discussed "this" (referring to Gale's harassing conduct and Plaintiff's complaints thereof), she would be terminated immediately.

31. Hughes further emphasized that if Plaintiff did not keep the investigation "confidential," her employment with Defendants would be terminated.

32. Moreover, Hughes made it clear that she, nor any of Defendant BCSS's other management would be involved with Plaintiff's complaints of discrimination and sexual harassment, relaying "we have nothing to do with this."

33. Plaintiff understood this to mean that Defendant BCSS's management would not help facilitate the investigation as it was attempting to keep Gale's conduct and Plaintiff's complaints secret in order to protect Gale.

34. Subsequently, on or about November 2, 2023, Defendant USPI's HR Director Sarah Brzozowski (hereinafter "Brzozowski") emailed Plaintiff in order to set up a telephone conversation regarding her aforesaid complaints.

35. Later that day, Brzozowski and Plaintiff then spoke by phone and Plaintiff again relayed the sexual harassment and gender discrimination that Gale had been subjecting her to.

36. Brzozowski also assured Plaintiff that a full investigation would be conducted, including interviewing witnesses (i.e., Flanagan) and reviewing Respondent BCSS' video footage.

37. In the meantime, Brzozowski informed Plaintiff that Gale was suspended pending the investigation.

38. Yet, when Plaintiff reported for one (1) of her shifts during Gale's alleged suspension, she observed Gale's car in the parking lot.

39. Visibly shaken, Plaintiff reported to Fuchs that she believed Gale was on the premises, despite the fact that Brzozowski informed Plaintiff that he was suspended.

40. Initially, Fuchs denied that Gale was on the premises, but later conceded that he was on the premises earlier but had left before I arrived.

41. Additionally, Plaintiff text messaged Brzozowski to inform her of the same to which she replied, "he shouldn't be."

42. Due to Gale's ongoing sexual harassing and abhorrent conduct, on or about November 8, 2023, Plaintiff began consulting with a psychiatrist in order to treat the severe emotional distress I was experiencing.

43. On or about November 16, 2023, Plaintiff met with Brzozowski, Fuchs, and Hughes. Brzozowski informed Plaintiff that her reports against Gale were "unfounded," alleging Defendants had conducted an investigation without providing any details.

44. Fuchs further told Plaintiff that Gale would be returning to work the following Monday, on or about November 20, 2023.

45. Plaintiff was extremely upsent and responded that she needed to process the information.

46. Fuchs instructed me to "try and ignore" Gale upon his return as he knew Plaintiff was "emotional."

47. When Plaintiff reported for work on or about November 21, 2023, she was forced to work with Gale.

48. After Plaintiff had time to reflect on the purported "results" of Defendants' investigation, on or about November 26, 2023, she sent an email to Defendant USPI's Head of HR, Margie Arian (hereinafter "Arian") for a further explanation into Defendants' "investigation."

49. In blatant retaliation, on or about November 27, 2023, Brzozowski called Plaintiff in an attempt to intimidate her for contacting the Head of HR.

50. Brzozowski, in an annoyed tone, asked Plaintiff whether she had seen the video footage, claiming it didn't corroborate her complaints.

51. Plaintiff informed Brzozowski that she was not provided with any information, including the video, and Brzozowski assured Plaintiff that she would send her the video and that "someone" would reach out to her.

52. During said call, Brzozowski also questioned whether Plaintiff was speaking with other employees regarding her complaints and Gale's sexual harassment stating, "I can't tell you not to talk about it, but there's a lot of stuff going around the surgery center."

53. Curiously, Plaintiff never received a copy of the video nor a follow up from anyone in HR. In fact, on or about November 29, 2023, Arian backtracked and informed Plaintiff that they would not be providing the video footage from October 30, 2023, because it was "confidential."

54. After Plaintiff spoke with Arian, Fuchs held a Defendant BCSS-wide meeting threatening to cut per diem RN hours if the "rumors" regarding Gale's sexual harassment of Plaintiff continued.

55. Notably, after stating that the same was "confidential," Fuchs informed the entire staff that the allegations were not true, thereby humiliating Plaintiff, as it was well-known the meeting was about Plaintiff.

56. On, or about November 7, 2023, Plaintiff asked the Charge Nurse on shift, Vitalia Lyons (hereinafter "Lyons") to leave early for the day. Lyons granted her permission to do so and informed her that she would notify Fuchs and Mahler.

57. As evidence of retaliatory animus, however, on or about December 15, 2023, Fuchs and Hughes issued Plaintiff a bogus write up, alleging she left work without informing them on or about November 7, 2023.

58. Interestingly, throughout my employment, I witnessed other RNs come in late and leave early without informing Fuchs or Mahler, but they were not similarly issued written discipline.

59. Due to Gale's sexual harassment/gender discrimination and Defendants' retaliation, Plaintiff's psychiatrist diagnosed her with post-traumatic stress disorder ("PTSD").

60. Accordingly, on or about December 18, 2023, Plaintiff's physician placed me on a medical leave of absence. Plaintiff provided Defendants with her psychiatrists note documenting her disability and serious medical condition along with her request for a medical leave of absence.

61. Defendants emailed Plaintiff back saying she needed to submit my leave request to the LOA team, which Plaintiff did via email that same day.

62. On or about January 18, 2024, Plaintiff submitted a request for a brief extension to her medical leave to Fuchs, Hughes, and Respondent's Third Party Leave of Absence Administrator Mary Justine Basco (hereinafter "Basco").

63. Plaintiff provided the aforesaid individuals with a physician's note noting her triggers and need for extended medical leave. Plaintiff further explained the following to Fuchs, Hughes, and Basco:

> The trigger my provider is referring to is Charles Gale. While I'm able to return to work after 60 days, I need assurances that I will not be scheduled to work while Charles is on the premises, under any

9

>circumstances. Otherwise, I will experience significant exacerbation of my PTSD as a result of the sexual harassment he has subjected me to. Please let me know whether I have these assurances in advance of my February 2024 return to work date.

64. As Plaintiff had not received a response regarding her requested accommodations, on or about February 1, 2024, Plaintiff again emailed Fuchs to follow up on the above-referenced medical leave and accommodations.

65. Fuchs responded that same day, telling Plaintiff she needed to speak with the LOA team as he was "not involved in the LOA process."

66. Just a few days later, on or about February 8, 2024, Brzozowski emailed Plaintiff asking to meet on or about February 12, 2024, at 9:30am via Microsoft Teams to discuss her request to no longer be scheduled to work at the same time as Gale.

67. During the meeting on or about February 12, 2024, Brzozowski informed me that Defendants would not be able to accommodate Plaintiff's request and would continue scheduling her with Gale.

68. Plaintiff asked if there were other ways Defendants could accommodate me and Brzozowski suggested that she could instruct Gale not to speak with me, but Fuchs made it clear that this accommodation would not be made.

69. As a result, Defendants constructively discharged Plaintiff from her employment on or about February 12, 2024.

**COUNT I**
**Violations of Title VII**
**([1] Gender Discrimination; [2] Sexual Harassment/Hostile Work Environment; and [3] Retaliation)**

70. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

71. Throughout Plaintiff's employment with Defendants, she was subjected to sexual harassment and hostile work environment because of her sex/gender.

72. Plaintiff complained to Defendants' management about the discriminatory conduct, sexual harassment, and hostile work environment that she was being subjected to because of her sex/gender.

73. Instead of investigating Plaintiff's aforesaid complaints, Defendants' management ignored them, left her legitimate concerns unresolved, and subjected her to further hostility and animosity.

74. Following her complaints of discrimination (discussed *supra*), Plaintiff was constructively discharged when Defendants failed to take meaningful remedial action to correct or prevent future sexual harassment.

75. Based on the foregoing, Plaintiff believes and avers that her sex/gender was a motivating or determinative factor in Defendants' decision to constructively discharger her.

76. Plaintiff also believes and therefore avers that she was constructively discharged in retaliation for engaging in protected activity under Title VII.

77. These actions as aforesaid constitute unlawful discrimination and retaliation under Title VII.

## COUNT II
### Violations of the ADA
### ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

78. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

79. Plaintiff suffers from qualifying health conditions under the ADA which affect her ability (at times) to perform some daily life activities such as managing stress and processing stress triggers.

80. Despite Plaintiff's aforementioned health conditions and limitations, she is still able to perform the duties of her job well with Defendants, however, Plaintiff did require reasonable medical accommodations at times.

81. Plaintiff requested reasonable accommodations from Defendants, including but not limited to time off work to treat for and care for her disabilities and minor schedule modifications (so she did not have to work with the person who was sexually harassing her).

82. Defendants failed to accommodate Plaintiff's aforesaid requests by refusing to modify her schedule and constructively discharged Plaintiff.

83. Plaintiff further believes and therefore avers that her disabilities and requests for accommodation were a motivating/determinative factor in the Defendants' decision to refuse to accommodate her and/or constructively discharge her.

84. Plaintiff also believes and therefore avers that she was terminated in retaliation for engaging in protected activity (requesting accommodations and objecting to discriminatory practices) under the ADA.

85. Defendants' actions as aforesaid constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

  A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

  B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

  C. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

  D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

  E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

  F. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

          Respectfully submitted,

          **KARPF, KARPF & CERUTTI, P.C.**

By: _____
    Ari R. Karpf, Esq.
    8 Interplex Drive
    Suite 210
    Feasterville-Trevose, PA 19053
    (215) 639-0801

Dated: June 25, 2024

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Elizabeth Nolan | : | CIVIL ACTION |
| v. | : | |
| USP Reading, Inc. d/b/a Bucks County Surgical Suites, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                      ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                            ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                        ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.            (X)

| 6/25/2024 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 3884 Charter Club Drive, Doylestown, PA 18902

Address of Defendant: 2800 Kelly Road, Suite 100, Warrington, PA 18976; 14201 Dallas Pkwy, Dallas, TX 75254

Place of Accident, Incident or Transaction: Defendants place of business

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 6/25/2024  _____(signature)_____  ARK2484 / 91538
*Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A. Federal Question Cases:**
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [X] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify): _____*

**B. Diversity Jurisdiction Cases:**
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: 6/25/2024  _____(signature)_____  ARK2484 / 91538
*Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
NOLAN, ELIZABETH

**DEFENDANTS**
USP READING, INC. D/B/A BUCKS COUNTY SURGICAL SUITES, ET AL.

**(b)** County of Residence of First Listed Plaintiff: Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); TITLE VII (42USC2000)

Brief description of cause:
Violations of the ADA, Title VII and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 6/25/2024

SIGNATURE OF ATTORNEY OF RECORD: *(signature)*

**FOR OFFICE USE ONLY**

RECEIPT #           AMOUNT           APPLYING IFP           JUDGE           MAG. JUDGE